UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SANDRA BAZILE, individually and
on behalf of all others similarly situated,

        Plaintiff,

  v.                                                                                  Case No. 18-C-1415

FINANCE SYSTEM OF GREEN BAY, INC. and
JOHN DOES,

        Defendants.

## DECISION AND ORDER GRANTING MOTION TO DISMISS

Plaintiff Sandra Bazile, individually and on behalf of all others similarly situated, filed this action on September 11, 2018, alleging that Finance System of Green Bay, Inc. and several John Does (collectively, FSGB) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq.*, when FSGB sent a letter to Bazile seeking to collect a debt she owed to Baycare Healthcare Systems, LLC (Baycare). Bazile alleges that FSGB's letter failed to disclose that the amount of the debt may increase due to the accrual of interest in violation of § 1692e and failed to state the amount of the debt in violation of § 1692g. Presently before the court is FSGB's motion to dismiss for lack of standing and for failure to state a claim. For the reasons that follow, FSGB's motion will be granted.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint by claiming that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a

motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true and view them in a light most favorable to the plaintiff, *Doe v. Village of Arlington Heights*, 782 F.3d 911, 914–15 (7th Cir. 2015), but this obligation is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Although, as a general matter, the confusing nature of a dunning letter is a factual question that, if well-pleaded, avoids dismissal under Rule 12(b)(6), dismissal is appropriate when it is "apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 (7th Cir. 2012) (citing *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)).

## ALLEGATIONS OF THE COMPLAINT

Bazile received a letter dated September 19, 2017, from FSGB, a debt collector, who sought to collect a debt she owed to Baycare. The letter was the first written communication to Bazile in connection with the collection of her Baycare debt. Bazile's debt arose out of one or more transactions entered into primarily for personal, family, or household purposes—specifically medical services. The top-right corner of the letter lists the date, "9/19/2017," and a "Total Bal." of $92.23. ECF No. 1-1. The letter lists five entries that comprise the total balance listed and next to each entry under the heading "Creditor Name" lists "Baycare Health Systems, Llc." *Id.* The letter informs Bazile of several payment options, including payment over the phone via check or

2

credit card or payment online via FSGB's website. The body of the letter begins: "Your creditor has placed your bill for collection." *Id.* The bottom of the letter states that the letter is from a debt collector and is an attempt to collect a debt. It explains that unless the recipient notifies FSGB within 30 days after receiving the notice that he or she disputes the validity of the debt or any portion thereof, FSGB will assume the debt is valid. If the recipient does dispute the validity or any portion of the debt, FSGB states it will obtain verification of the debt or obtain a copy of a judgment and mail the verification or judgment to the recipient. *Id.*

Bazile claims that the letter violates the FDCPA because it "does not disclose that the amount of the debt may increase due to the accrual of interest" and "fails to disclose the amount of the debt as required by the FDCPA." Compl., ECF No. 1, at ¶¶ 33–34. Such failures, Bazile claims, violate §§ 1692e(2), (5), and (10) and 1692g(a)(1) of the FDCPA. *Id.* at ¶ 53. Bazile seeks relief in the form of actual damages, statutory damages of up to $1,000, and, should she prevail, reasonable attorneys' fees and costs. Bazile also seeks to represent a class consisting of all consumers to whom FSGB mailed an initial written communication in the form of Bazile's letter to an address in Wisconsin between September 11, 2017 and October 2, 2018. *Id.* at ¶ 37. Should the class prevail, each named plaintiff would be entitled to statutory damages, and the class damages would be capped at the lesser of $500,000 or 1% of FSGB's net worth. § 1692k(a).

## ANALYSIS

### A. Standing

FSGB first seeks to dismiss Bazile's complaint for lack of standing. Whether a plaintiff has standing is an issue of subject matter jurisdiction, as Article III of the United States Constitution "confines federal courts to adjudicating actual 'cases' and 'controversies.'" U.S. Const., art. III, § 2;

3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1991). The plaintiff bears the burden of showing that he or she is entitled to have the court decide the case. *Allen v. Wright*, 468 U.S. 737, 750–51 (1984). That is, the plaintiff must present the court with a justiciable case or controversy. *Id.* The first requirement of standing, and the focus of FSGB's motion to dismiss, is that the plaintiff must have suffered an injury-in-fact. *Lujan*, 504 U.S. at 560–61. When discussing this requirement, the Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), noted that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue a plaintiff who would not otherwise have standing." *Id.* at 1547–48 (citations omitted). However, the Court also recognized that intangible harm can constitute an injury-in-fact and that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* at 1549. The Court further explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment)). "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," such as where a "risk of real harm" exists. *Id.*; *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018). In such a case, the plaintiff "need not allege any additional harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549.

Bazile notes that this case was stayed pending this court's decision on a motion to dismiss in *Larkin v. Finance System of Green Bay, Inc.*, No. 18-C-496, 2018 WL 5840769 (E.D. Wis. Nov. 8, 2018), and she argues that the resolution of the standing issue in that case controls here. The court agrees that the reasoning in *Larkin* applies equally in this case, as the facts here are not materially different from those in *Larkin*. Here, Bazile alleges that FSGB's letter was false,

4

deceptive, and misleading and failed to state the amount of the debt in violation of §§ 1692e and 1692g. As this court articulated in *Larkin*, these allegations, if true, create a risk of causing Bazile the type of harm the FDCPA seeks to prevent. Bazile's injury may be intangible, but the injury is both concrete and particularized because Bazile is a direct recipient of the letter and a risk of real harm exists where the letter is false, deceptive, and misleading about Bazile's debt. Because Bazile need not allege any "additional harm," she has standing. *See Spokeo*, 136 S. Ct. at 1549.

**B. FDCPA Claims**

The FDCPA "is designed to protect consumers from abusive and unfair debt collection practices." 15 U.S.C. § 1692(e); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320 (7th Cir. 2016). To help accomplish that goal, § 1692e prevents the use of false, deceptive, or misleading representations or means in connection with the collection of a debt and "§ 1692g(a) provides that in either the initial communication with a consumer in connection with the collection of a debt or another written notice sent within five days of the first, a debt collector must provide specific information to the consumer," including "the amount of the debt." *Janetos*, 825 F.3d at 320–21. Bazile alleges that FSGB's letter's listing of the "Total Bal." as $92.23, without disclosing that the debt may increase due the accrual of interest, violates multiple sections of § 1692e as well as § 1692g(a)(1). *See Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 371 (7th Cir. 2018) ("[W]hether the statement was misleading under § 1692e goes hand-in-hand with whether the amount of the debt has been accurately disclosed under § 1692g(a)(1)." (internal quotation marks omitted)).

In this circuit, "[c]laims brought under the Fair Debt Collection Practices Act are evaluated under the objective 'unsophisticated consumer' standard." *Gruber v. Creditors' Protection Serv.,*

5

*Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (citations omitted). Although the unsophisticated consumer may be "uninformed, naive, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), "she has 'rudimentary knowledge about the financial world' and is 'capable of making basic logical deductions and inferences.'" *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). This circuit's unsophisticated consumer standard "is not the same as the rejected least-sophisticated-debtor standard" that other courts use. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005). The Seventh Circuit accordingly "disregard[s] unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." *Id.*; *Gruber*, 742 F.3d at 274. The unsophisticated consumer "is not a dimwit" and is "reasonable," but he is not a gifted linguist who closely parses a debt collection letter like a patent lawyer construes a patent. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003); *cf. Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).

Bazile claims that FSGB's letter is misleading and violates the FDCPA because it fails to state whether interest is accruing on the debt listed therein. The problem with Bazile's claim is that the FDCPA does not require the debt collector to state whether or not the debt accrues interest. In *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, the Seventh Circuit held that a debt collector's letter that stated only the unpaid principal owed by the debtor violated § 1692g(a)(1) of the FDCPA by failing to state the amount owed. 214 F.3d 872, 874 (7th Cir. 2000). The letter in that case stated that the "'unpaid *principal* balance' of the loan (emphasis added) was $178,844.65, but added that 'this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's

6

interest in the property, as authorized by your loan agreement.'" *Id.* at 875. In holding that this statement violated the FDCPA, the court explained:

> The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt. . . . It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due—interest and other charges as well as principal—on the date the dunning letter was sent. We think the statute required this.

*Id.* at 875–76. That's precisely what FSGB did here—it stated the "total balance," in other words, the "amount due," on September 19, 2017.

The court went on in *Miller* to offer a "safe harbor" formula for debt collectors to use where the amount of the debt varies from day to day. The "safe harbor" formula fashioned by the court reads as follows:

> As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800– [phone number].

*Id.* at 876. The court emphasized, however, that it was not holding that a debt collector must use this form of words to avoid violating the statute. But if it did use this formula, the court held, and did not add other words that confused the message, the debt collector "will as a matter of law have discharged his duty to state clearly the amount due." *Id.*

More recently, the Seventh Circuit has suggested that regardless of whether interest is accruing, as long as the debt collectors set out a specific amount of the debt, they have complied with the FDCPA. In *Aker v. Americollect, Inc.*, the plaintiff claimed that the defendant debt

7

collector had violated the FDCPA by unlawfully adding interest to the amount of the outstanding balance. 854 F.3d 397, 398–99 (7th Cir. 2017). Although the court ultimately held that the addition of interest to the underlying debt was lawful under state law, it noted that the debt collectors might have argued that they had complied with the FDCPA simply by demanding a specific amount:

> The debt collectors might have replied that § 1692g(a)(1) is satisfied by demanding a specific amount. They calculated interest, added it to the principal, and demanded payment of the resulting amount, rather than leaving the debtors to guess how much they owed. The FDCPA provides a means to contest whether the amount claimed is due. 15 U.S.C. § 1692g(b). This implies that naming an incorrect figure is not automatically a violation of federal law.

*Id.* at 399. The court's logic seems inescapable. If the debt collector's error as to the amount due is itself a violation of the Act, why require that the debt collector include in its initial communication an invitation that the debtor notify it within thirty days if the debt, or any portion thereof, is disputed.

Plaintiff's argument does find support in the Second Circuit. In *Avila v. Riexinger & Associates, LLC*, the Second Circuit held that a debt collector's letter that failed to notify the debtors that their balances could increase due to interest and late fees was misleading in violation of § 1692e of the FDCPA. 817 F.3d 72 (2d Cir. 2016). In so ruling, the court explained:

> Because the statement of an amount due, without notice that the amount is already increasing due to accruing interest or other charges, can mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account, we hold that the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees. We think that requiring such disclosure best achieves the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e. It also protects consumers such as plaintiffs who may hold the reasonable but mistaken belief that timely payment will satisfy their debts.

*Id.* at 76.

In this case, there is no indication that the debt collector is in fact charging interest, even if it is legally entitled to do so. Bazile argues that the fact that interest is accruing can be reasonably inferred from the facts alleged in the complaint. Alternatively, she requests leave to amend her complaint to make that allegation more explicit.

But because this court is not bound by *Avila* and does not find its reasoning persuasive, no amendment will help. Regardless of whether interest is or is not accruing, the letter does not violate the FDCPA. As noted above, the FDCPA does not require that the debt collector tell the debtor whether the balance is or is not accruing interest or late fees. While doing so might be consistent with the Congressional purpose underlying the FDCPA, Congress did not require that debt collectors include that information along with the other specific disclosures it directed them to make in their initial communication with the debtor, though it could easily have done so. Congress was certainly aware that creditors charge interest. For a court to add such a requirement by way of statutory construction and thereby subject debt collectors to multiple FDCPA lawsuits by debtors hardly seems fair and reasonable. This is especially the case since the recipients of such letters usually seek not only statutory damages of up to $1,000, but also representation under Rule 23 of a class comprising everyone who received such a letter, for which damages of up to a half million dollars or one percent of the debt collector's net worth, whichever is less, can be awarded, plus the debtor's actual attorney's fees.

As one of the district courts bound by *Avila* has noted, the litigation it has spawned seems far removed from the debt collection practices the FDCPA was intended to address:

> The multitude of cases on post-judgment interest filed in this district since *Avila* suggest that the real beneficiaries here are plaintiffs' attorneys who recover a fee for going over collection letters with a fine-toothed comb to snag some technical

9

argument about how the letter could have more clearly stated the interest component. *See Ghulyani v. Stephens & Michaels Assocs.*, No. 15-CV-5191, 2015 WL 6503849, at *3 (S.D.N.Y. Oct. 26, 2015) (on similar facts, noting that "the interpretation espoused by Ghulyani is indeed idiosyncratic—much more likely to be arrived at by an enterprising plaintiff's lawyer than by a least sophisticated consumer."). The instant case, together with many of the FDCPA cases on my docket, suggests that the FDCPA is being privately enforced mostly on the hyper-technical margins of permissible collection activity. We have drifted quite far from the truly awful collection practices—threatening violence, disclosing a consumer's personal affairs to others, impersonating public officials—that prompted Congress to enact the FDCPA. See S. Rep. 95-382, at 2 (1977). We are no longer deterring collection companies from abusing, tricking, and misleading debtors into making payments that they do not have to or would not want to make if they had the relevant facts. The courts are to some extent simply burdening the collection industry with a continuing portfolio of litigation that potentially raises the cost of credit for all consumers.

*Islam v. Am. Recovery Serv. Inc.*, No. 17-CV-4228, 2017 WL 4990570, at *3 (E.D.N.Y. Oct. 31, 2017).

The experience of this court in FDCPA cases confirms the *Islam* court's observations. For all of these reasons, Bazile's claims fail.

## CONCLUSION

For the foregoing reasons, FSGB's motion to dismiss (ECF No. 9) is **GRANTED**, and Bazile's request for leave to amend her complaint is **DENIED**. The Clerk is directed to enter judgment dismissing this case.

**SO ORDERED** at Green Bay, Wisconsin this  15th   day of February, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court